## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION

### <u>Electronically filed</u>

| | | |
|---|---|---|
| SOUTH SIDE QUARRY, LLC and<br>JASON LEE STANFORD | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| | ) | **CASE NO:** <u>3:18-cv-706-CHB</u> |
| v. | ) | |
| | ) | |
| METROPOLITAN SEWER DISTRICT | ) | **COMPLAINT FOR DECLARATORY** |
| | ) | **AND INJUNCTIVE RELIEF, CIVIL** |
| | ) | **PENALTIES, AND DAMAGES** |
| Serve:  Paul Purifoy | ) | |
| 700 W. Liberty Street | ) | |
| Louisville, Kentucky 40202 | ) | |
| | ) | |
| **AND** | ) | |
| | ) | |
| ANDY BESHEAR, ATTORNEY GENERAL | ) | |
| COMMONWEALTH OF KENTUCKY | ) | |
| | ) | |
| Serve:  Andy Beshear | ) | |
| Office of Attorney General | ) | |
| 700 Capital Ave., Suite 118 | ) | |
| Frankfort, KY 40601-3449 | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Plaintiffs South Side Quarry, LLC ("**SSQ**") and Jason Lee Stanford, ("**Stanford**"), acting pursuant to authority of the Federal Water Pollution Control Act, 33 U.S.C. Sections 1251 *et seq.* (the "**Clean Water Act**" or the "**CWA**") and the applicable laws and Statues of the Commonwealth of Kentucky, hereby file this Complaint and allege as follows:

1

## I.    NATURE OF ACTION

1.    This is a civil suit brought under the citizen suit enforcement provisions of the Federal Water Pollution Control Act, 33 U.S.C 1251, §505, against Defendant Louisville and Jefferson County Metropolitan Sewer District ("**MSD**") for violations of the Clean Water Act with regard to a detention basin located at Vulcan Quarry ("**Vulcan Quarry**") in the Pond Creek Watershed. The claims include violation of effluent or pollution standards or limitations of the Clean Water Act; violations of limitations established in the permits issued to MSD by the Kentucky Department of Environmental Protection ("**KDEP**") Kentucky Department of Water ("**KDOW**"), and the Kentucky Environmental Cabinet ("**the Cabinet**") pursuant to authority delegated to it by the Federal Environment Protection Agency ("**EPA**") under Section 402(b) of the CWA 33 U.S.C. § 1342(b); for discharges of effluent, pollutants, floodwater, and stormwater without sufficient State and/or Federal permits; for violations of a Consent Decree entered into between MSD, the Cabinet and the EPA; for improperly diverting Fishpool Creek; and for related State law claims relating to nuisance, trespass, additional damage to property, and Reverse Condemnation. Plaintiffs seek damages, legal fees, and injunctive relief.

## II.    JURISDICTION AND VENUE

2.    This Court has subject matter jurisdiction over this action pursuant to Section 309(b) of the Act, 33 U.S.C. § 1319(b), and 28 U.S.C. §§ 1331, 1345 and 1355. This Court also has subject matter jurisdiction over the parties and subject matter of this action pursuant to Section 505(a)(1) of the CWA, 33 U.S.C. § 1365(a)(1).

3.    Pursuant to 28 U.S.C. § 1367 (a), the Court has supplemental jurisdiction over state law claims against MSD asserted by Plaintiffs.

4.     In accordance with the Clean Water Act 33 U.S.C. § 1365(b)(1)(A), Plaintiffs notified MSD, the Administrator of the EPA, and the Cabinet, of their intent to sue in a letter dated July 27, 2018 ("**Notice letter**"). The Notice Letter was sent by certified mail, return receipt requested. A true and correct copy of the letter and its Exhibits thereto are attached hereto as **Attachment 1** and incorporated herein by reference.

5.     More than sixty days have passed since the Notice Letter was served on MSD and the relevant State and Federal agencies. Plaintiffs are informed and believe, and on that basis allege, that neither the EPA nor the Commonwealth of Kentucky has commenced or is diligently prosecuting an action to redress the violations and breaches alleged in this Complaint.

6.     Venue is proper in the Western District of Kentucky pursuant to CWA §505 (c)(1), 33 U.S.C. §1365(c), and 28 U.S.C. §1391(b) and (c) because the source of the violations is located at Vulcan Quarry, which is within this judicial district.

### III.    PARTIES

7.     Stanford is a private citizen and resident of the Commonwealth of Kentucky.

8.     SSQ is a Limited Liability Company whose principal place of business is in Louisville, Kentucky.  The members of SSQ are all residents of Kentucky.

9.     MSD is a political subdivision of the Commonwealth established under the laws of the Commonwealth, KRS Chapter 76, and is a "person" within the meaning of Section 502(5) of the Clean Water Act, 33 U.S.C. § 1362(5), and a "municipality" within the meaning of Section 502(4) of the Clean Water Act, 33 U.S.C. § 1362(4).

10.     Pursuant to Section 309(e) of the CWA, 33 U.S.C. § 1319(e), the State in which the municipality is located must be a party. MSD is a municipality located within the Commonwealth of Kentucky ("**the Commonwealth**" or "**the State**") and the

Commonwealth of Kentucky is therefore a necessary party to this action.

## IV.    INTRODUCTION

### A.    <u>Legal Requirements for Stormwater Management</u>.

11.    The federal Clean Water Act generally prohibits the discharge of pollutants into waters of the United States.  Section 301 of the Clean Water Act states that "[e]xcept as in compliance with this section [and others] the discharge of any pollutant by any person shall be unlawful."  33 U.S.C. § 1311.  Kentucky law similarly prohibits discharges of pollutants into waters of the Commonwealth.  KRS 224.70-110 states that "no person shall, directly or indirectly, throw, drain, run or otherwise discharge into any of the waters of the Commonwealth, or cause, permit or suffer to be thrown, drained, run or otherwise discharged into such waters any pollutant, or any substance that shall cause or contribute to the pollution of the waters of the Commonwealth in contravention of the standards adopted by the cabinet or in contravention of any of the rules, regulations, permits, or orders of the cabinet or in contravention of any of the provisions of this chapter."

12.    Notwithstanding the general prohibition on the discharge of pollutants, the Clean Water Act regulates discharge of pollutants into the waters of the United States from point sources under the National Pollution Discharge Elimination System ("**NPDES**").  33 U.S.C. § 1342.  Kentucky implements the Kentucky Pollution Discharge Elimination System ("**KPDES**") and issues KPDES permits.  See, e.g., 401 KAR 5:050 to 401 KAR 5:080.

13.    Section 301(a) of the CWA, 33 U.S.C. §1311(a), prohibits the discharge of any pollutant into waters of the United States unless the discharge complies with various enumerated sections of the CWA.  Among other things, Section 301(a) prohibits discharge

4

not authorized by, or in violation of, the terms of an NPDES issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

14.    MS4 is a designation that refers to Municipal Separate Storm Sewer System Programs generally and MSD's MS4 program specifically herein. MSD was issued a KPDES MS4 stormwater discharge permit, KY000001, in 1994. The MS4 KPDES Stormwater Permit was issued to MSD by KDOW effective May 1, 2000 and expired March 31, 2004. MSD submitted a permit reapplication on May 24, 2004 that remains pending. Accordingly, the MS4 Permit issued in 2000 remains in effect.

15.    The Clean Water Act makes it illegal to discharge pollutants such as floodwater and stormwater to "navigable waters" without an NPDES permit. 33 U.S.C. §§ 1311(a), 1342(a). Section 301(a) prohibits discharge not authorized by, or in violation of, the terms of an NPDES permit issues pursuant to Section 402 of the Clean Water Act, 33 U.S.C. § 1342.

16.    The Commonwealth has been authorized by the EPA to administer the NPDES program within its jurisdiction pursuant to Section 402(b) of the Act, 33 U.S.C. § 1342(b), and to issue NPDES permits authorizing the discharge of pollutants directly into navigable waters of the United States in compliance with the applicable requirements of Section 301 of the Act, 33 U.S.C. § 1311, and such other conditions as have been administratively determined to be necessary to carry out the provisions of the Clean Water Act.

17.    Under its authority to issue NPDES permits, the Commonwealth, through KDEP, has issued permits to MSD under the Kentucky Pollutant Discharge Elimination System ("**KPDES**") for the 27 waste water treatment facilities, ("**WWTFs**"), operated and maintained by MSD, authorizing the discharge of pollutants, within the meaning of

5

Section 502(12) of the Act, 33 U.S.C. § 1362(12), in accordance with effluent limitations, monitoring requirements, and other conditions set forth in each KPDES permit. Each KPDES permit has been in effect at all times relevant to this Complaint.

18.    The violations of effluent or pollution standards or limitations described herein concern discharges by MSD and of floodwater and/or stormwater from Fishpool Creek into Vulcan Quarry and MSD's rerouting of Fishpool Creek into Vulcan Quarry in excess of the volume authorized by permit, at times not authorized by permit, and for periods longer than authorized by permit. The effect of these violations is to cause Vulcan Quarry to function as a cesspit, collecting debris and settled pollutants from Fishpool Creek.

19.    The Clean Water Act defines the term "navigable waters" as the "waters of the United States. "33 U.S.C. § 1362(7). The EPA has promulgated regulations for the CWA Section 402 NPDES permit program defining waters of the United States. (See 40 C.F.R. § 122.2.) EPA's definition of waters of the United States includes traditionally navigable waters such as the Ohio River **and its tributaries**. Fishpool Creek is a tributary of Pond Creek, which is a tributary of the Ohio River, which feeds into the Mississippi River, which runs into the Gulf of Mexico and the Atlantic Ocean. The Ohio River and its tributaries, including Fishpool Creek, are therefore "navigable waters of the United States" within the meaning of Section 502(7) of the Act, 33 U.S.C. § 1362(7). In addition, the Department of the Army has currently made a jurisdictional determination claiming that Vulcan Quarry is considered to be "waters of the U.S."

20.    At all times relevant herein, MSD has owned or operated wastewater treatment facilities and their associated sanitary sewer *and combined sanitary sewer - storm sewer collection systems*, which receive and treat wastewater *and storm water*

*runoff* from residential, commercial, industrial and combined sewage sources located within the City of Louisville and Jefferson County, Kentucky, and which discharge treated, partially treated, and untreated wastewater into the Ohio River and its tributaries, including Fishpool Creek.

21.    One of the KPDES permits issued to MSD, permit no. KY0022411 issued for the Morris Forman Waste Water Treatment Facility ("**MF-WWTF**"), authorizes the discharge of pollutants from point sources other than a Waste Water Treatment Facility post-treatment outfall, those point sources being the one hundred fourteen (114) combined sewer overflow ("**CSO**") points specified in that permit. Upon information and belief, this permit may apply to MSD's construction and operation of a water detention basin at Vulcan Quarry the ("**Vulcan Quarry Detention Basin**").

22.    MSD's construction and operation of the Vulcan Quarry Detention Basin is subject to the permitting requirements set forth in KPDES MS4 KY000001, among other permits issued by the Commonwealth, pursuant to the Clean Water Act.

23.    At all times relevant to this Complaint, MSD has violated and continues to violate Section 301 of the Act, 33 U.S.C. § 1311 by failing to meet the conditions contained in the KPDES permits governing the discharge of pollutants. MSD has also violated and continues to violate the CWA, by substantially diverting and redirecting Fishpool Creek into Vulcan Quarry in violation of those permits and/or without sufficient permits or authorization.

24.    At all times relevant to this Complaint, MSD has violated and continues to violate permits issued by the Commonwealth with respect to MSD's use of Vulcan Quarry.

25.    At all times relevant to this Complaint, MSD's use of Vulcan Quarry has been in significant part outside the scope of any control or purview afforded by an original and

Amended Consent Decree (collectively the "**Consent Decree**") entered into between the Environmental and Public Protection Cabinet, EPA and MSD.

26.    At all times relevant to this Complaint, MSD has violated and continues to violate the property rights of Plaintiffs, by substantially diverting and re-directing a significant portion the Fishpool Creek into Vulcan Quarry in excess of limitations set forth in an Easement restricting MSD's use of Vulcan Quarry.

27.    Section 505(a)(1) of the CWA provides for citizen enforcement actions by any "person," including individuals acting in their official state capacity, for violations of NPDES permit requirements and for unpermitted discharges of pollutants. 33 U.S.C § 1342.

28.    An action for injunctive relief under the CWA is authorized by 33 U.S.C. § 1365(a).

## V.    STATEMENT OF FACTS

### A.    Vulcan Quarry and Fishpool Creek

29.    Vulcan Quarry is a 50-acre quarry located adjacent to Fishpool Creek in Jefferson County, Kentucky.  The quarry and the adjoining land is part of the Pond Creek Watershed.  In the 1980's, MSD studied the area as part of attempting to alleviate problems associated with floodwaters.  MSD determined that it was feasible to construct two "detention basins" to temporarily collect floodwaters so that the collected excess water could be later released without causing further flooding of the Pond Creek Watershed. One detention basin sought to be constructed was at the site of Vulcan Quarry.

30.    MSD's plan with respect to creating a detention basin at Vulcan Quarry required creating a structure to divert floodwaters from Fishpool Creek into Vulcan Quarry during periods of particularly heavy rainfall.  After the flooding subsided, the plan

was to drain the floodwaters that were temporarily being stored in Vulcan Quarry back into Fishpool Creek.

31.     Pursuant to its plan to create a detention basin at Vulcan Quarry, MSD attempted to acquire Vulcan Quarry.  At the time, Vulcan Quarry was owned by two entities.  ORK-Ltd ("**ORK**") owned 47 acres on the northeast side of Vulcan Quarry ("**the Quarry Property**"); and J&R Distributors, Inc. ("**J&R**"), owned (and still owns) six acres on the southwest end of Vulcan Quarry.  Although using Vulcan Quarry as a detention basin would affect the entire quarry, the creation of the detention basin at Vulcan Quarry would involve construction and alterations entirely contained on the Quarry Property.

32.     MSD, ORK and J&R negotiated and discussed the possibility of MSD acquiring the entire quarry or obtaining necessary easements to enact MSD's plan.  Those negotiations broke down, and in 1997, MSD filed separate (but since consolidated) actions in Jefferson County Circuit Court to acquire the properties in fee by condemnation. That lawsuit, <u>Louisville and Jefferson County Metropolitan Sewer District v. ORK-LTD., Inc. and J&R Distributors, Inc.</u>, 97-CI-04395 C/W 97-CI-04423 ("**the State Condemnation Action**"), is held in abeyance given this action, although the principle issue -- the maximum rights MSD may have to Vulcan Quarry -- has been resolved.   In the State Condemnation Action, SSQ (as successor in interest to ORK), has moved the Circuit Court to order MSD to show cause why it should not be held in civil and criminal contempt of certain orders of the Circuit Court.  This motion has been held in abeyance pending this action.

33.     In the State Condemnation Action, MSD consistently claimed that the sole purpose of the claimed acquisition was to reduce excessive flooding in the Pond Creek

Watershed. In the State Condemnation Action, the Jefferson County Circuit Court in March of 1998 determined that MSD could <u>not</u> condemn the properties in fee, but could only condemn easements for its desired use. In its determination (the "**Circuit Court Judgment**"), the Circuit Court denied MSD's motion to condemn in fee simple the property in question, finding that the proposed taking would far exceed MSD's contemplated use of Vulcan Quarry. The Circuit Court denied MSD's motion for summary judgment, finding that MSD "abused its discretion" and "acted arbitrarily" in attempting to condemn Vulcan Quarry in fee simple, because the "record indicate[d] that MSD [could] accomplish the project by attaining a right to use the property by easements." (Circuit Court Judgment, pp. 4-5, Exhibit B to Notice Letter, **Attachment 1**).

34.    In June of 1999, "in conjunction with [the State Condemnation Action]" which enjoined MSD from permanently taking the Quarry Property, MSD was given a limited easement over Vulcan Quarry ("**the Easement**"). (Exhibit C to Notice Letter, **Attachment 1**).

35.    MSD took the Easement but appealed the Circuit Court Judgment preventing MSD from permanently taking the Quarry Property to the Kentucky Court of Appeals.

36.    On October 1, 1999, the Appellate Court affirmed the Circuit Court Judgement, finding that "MSD's use is simply to divert additional water into the impoundment and then release the water after the rain has subsided" and found that "condemning more than an easement," directly or indirectly, would "far exceed the underlying necessity." (Appellate Court decision, Exhibit D to Notice Letter, **Attachment 1**).

37.    After the Court of Appeals affirmed the Circuit Court Judgment, MSD then appealed that ruling to the Kentucky Supreme Court, which denied discretionary review, rendering the Circuit Court's decision final.  This left MSD with the Easement over the Quarry Property to use Vulcan Quarry as a detention basin for: (1) excess floodwater; (2) during periods of heavy rain; and (3) only as long as necessary to allow flooding conditions to subside.

### B.    The Consent Decree between MSD, EPA and the Cabinet

38.    MSD owns and operates a regional sewage system in Jefferson County, Kentucky which includes both (a) a combined sewer system ("**CSS**") that conveys sanitary wastewaters and stormwaters through a single pipe system to MSD's Morris Forman Wastewater Treatment Plant ("**MFWTP**"), and (b) separate sanitary sewer systems ("**SSS**") which convey sanitary wastewaters to other MSD wastewater plants ("**WWTPs**") and through the CSS to MFWTP.

39.    The Consent Decree addresses Sanitary Sewer Overflows ("**SSOs**") and Unauthorized Discharges[1] from MSD's SSS, CSS and WWTPs, and discharges from MSD's combined sewer overflow ("**CSO**") locations identified in the MFWTP KPDES permit. The Consent Decree requires MSD to finalize, develop, submit and implement plans for the continued improvement of MSD's Sewer System.

40.    The process for MSD to comply with its KPDES permits and update its SSS, CSS and WWTPs to adequately address SSOs and Unauthorized Damages, and discharges from MSD's CSO locations identified in its MFWTP KPDES permit is an ongoing and

---

[1] As used in the Consent Decree and in this Complaint, "Unauthorized Discharge" means (a) any discharge of wastewater to waters of the United States from MSD's Sewer System or WWTPs through a point source not authorized by a KPDES permit and (b) any Bypass at MSD's WWTPs prohibited pursuant to the provisions of 40 C.F.R. § 122.41(m)(2) and (4) or 401 KAR 5:065, Section 1(13)(a) and (c).

evolving effort that includes the assessment process and the design and construction of necessary infrastructure to meet permit conditions. Under the Consent Decree, the Cabinet and EPA are charged with the duties of applying applicable state and federal law and regulating MSD in a manner protective of human health and the environment. The parties entered into the original and Amended Consent Decrees to address claims arising from MSD's alleged violations of its KPDES permit.

41.    During the early 1970's, Louisville conducted an Urban Renewal Program that MSD claims allowed it to separate some CSOs and eliminate several others. During the 1980's, MSD claims it further modified approximately ten major CSOs. In addition to the regular maintenance performed on the collection system, MSD claims it implemented a program in 1986 to further improve the operation and maintenance of the CSS. MSD claims it developed a pretreatment program to minimize CSO impact and correct dry weather overflow problems by the early 1990's.

42.    In the Consent Decree, MSD asserted that it had identified SSOs and Unauthorized Discharges in MSD's Sewer System and WWTPs which the Cabinet and EPA contended are violations of state law and the Clean Water Act. MSD further claims that its identification of SSOs and Unauthorized Discharges has been made in MSD's Sanitary Sewer Overflow Plan ("**SSOP**") and the annual updates to that plan made in MSD's Annual WATERS Report. MSD claims it has submitted to the Cabinet Annual WATERS reports since 1999 containing updates on its MS4, CSOP, LTCP, NMC, and SSOP progress.

43.    MSD entered into the Amended Consent Decree to further the objectives of KRS Chapter 224 and the Clean Water Act, including the CSO Control Policy. In the Consent Decree, MSD agreed that all plans, reports, construction, remedial maintenance,

and other obligations in the Consent Decree, *had the objective of ensuring that MSD complies with the Clean Water Act, and all applicable federal and state regulations*, and met the goals and objectives of the Clean Water Act to eliminate SSOs and Unauthorized Discharges from MSD's SSS, CSS and WWTPs, and to address discharges from MSD's CSO locations identified in its MFWTP KPDES permit.

### C.   The use of Vulcan Quarry as a Detention Basin

44.    In order to modify Vulcan Quarry to meet the needs articulated by MSD in its plan to use Vulcan Quarry as a detention basis in times of flooding and as limited by the Easement, MSD was required to obtain a permit issued by the Commonwealth's Department of Environmental Protection, Division of Water, KDOW.

45.    In October of 1998, MSD applied for a "**Flood Diversion Project**" Permit, describing the project as the "construction of a diversion structure to direct floodwater into an existing Vulcan Quarry," and claimed that the "normal flow" of Fishpool Creek would <u>not</u> enter the quarry.  (Stream Construction Permit, Permit No. 9259-REVISED along with the Permit Application, Exhibit E to Notice Letter, **Attachment 1**).  Further, MSD stated that the discharge capacity of the Project's proposed outlet pipe was "sufficient to dewater the active storage in the basin in 7 days, after a 100-year flood."

46.    In May of 1999, the Kentucky Department of Environmental Protection approved the Flood Diversion Project and issued Stream Construction Permit No. 9259-Revised.  This permit (the "**Stream Construction Permit**") was issued under the condition that any deviation from MSD's Project constituted a violation KRS 151.280, where substantial civil penalties would be assessed.  The Stream Construction Permit states that it does not relieve MSD from the responsibility of obtaining any other permits or licenses required by the Cabinet or other state, federal or local agencies.

47.     MSD, in conjunction with the Corp of Engineers, prepared Construction Drawings, labeling the Project "Pond Creek – Louisville Kentucky, Local Flood Protection Project–Phase Vulcan Detention Basin Plan." (**Attachment 2**).

48.     In 1999, while the State Condemnation Action was on appeal, MSD began making alterations to Vulcan Quarry exactly according to its original plan (assuming ownership of the Quarry rather than an easement). These alterations as built are referred to herein as the **Vulcan Quarry Detention Basin**. MSD thereby misappropriated an interest in the Quarry Property and Vulcan Quarry in excess of the Easement, effecting a permanent taking of the Quarry Property in violation of the decisions of the Circuit Court and Court of Appeals, the Easement, permits issued by the Commonwealth and the Clean Water Act.

49.     As built, the Vulcan Quarry Detention Basin effectively reroutes a significant portion of Fishpool Creek into the Vulcan Quarry (1) at volumes in excess of the limitations set forth in the Easement, (2) at times not authorized by the limitations set forth in the Easement, and (3) for a duration of time in excess of the duration allowed by the Easement.

50.     As built, the Vulcan Quarry Detention Basin is in violation of the permits issued by the Commonwealth.

51.     In creating and operating the Vulcan Quarry Detention Basin, MSD lowered the previous elevation of the "existing ground line" of Vulcan Quarry and the property line abutting Fishpool Creek to create a "spillway," allowing a significant portion of Fishpool Creek to enter Vulcan Quarry through the spillway. Thereafter, a significant portion of Fishpool Creek was permanently diverted into Vulcan Quarry. As of today, this remains unchanged however, water is also going under the spillway from Fishpool Creek into

Vulcan Quarry. MSD thus permanently raised the water surface elevation of Vulcan Quarry by ten feet or more, constituting a permanent taking of 15,981,700 cubic feet of Quarry Property. MSD has thus misappropriated over 15 million cubic feet of Quarry Property in violation of the Easement and the Circuit Court's order enjoining a permanent taking of portions of the Quarry Property, the permits issued by the Commonwealth and the Clean Water Act.

52.   By diverting Fishpool Creek as described above, MSD is utilizing Vulcan Quarry as a permanent settling pond/septic system/filtration system. Millions of gallons of effluent and pollutant and debris laden water enters the quarry on a regular basis. This occurs as a result of normal rainfall, not just during flood conditions. The water stays in Vulcan Quarry long after normal or heavy rainfall has passed. This causes effluent and pollution to become trapped in Vulcan Quarry as these pollutants settle on the bottom of the Quarry Property, which is outside the easement and for which there is no applicable permit.

**D.    Acquisition of the Vulcan Quarry by South Side Quarry, LLC and Stanford's interest in Fishpool Creek and Vulcan Quarry.**

53.   At a judicial sale in Jefferson County, June of 2012, ORK's entire interest in fee simple in the Quarry was conveyed to Lakeland West Capital, IV, LLC.[2]  In November of 2012, Lakeland West Capital IV, LLC conveyed its entire interest in the Quarry Property to SSQ for consideration under a general warranty deed.[3]  SSQ now owns the Quarry Property and is the successor in interest to ORK.

---

[2] *See* Lakeland West Capital IV, LLC v. ORK-LTD, Inc., Jefferson Circuit Court Division 11, No. 10-CI-402867.
[3] *See* Jason Stanford v. Lakeland West Capital IV, LLC, Jefferson Circuit Court Division 12, No. 12-CI-4577.

54.     Stanford is an avid outdoorsman, whose Grandfather and Father took him hunting and fishing on their family farm at Kentucky Lake, instilling in him the importance of living off and respecting the land.  Stanford is committed to passing on these values to his children and to see his family heritage live on.

55.     Stanford acquired the Quarry Property (through SSQ) as a once-in-a-lifetime 47-acre property, 15 minutes from his home in Louisville, Kentucky.  He considered Vulcan Quarry and neighboring Fishpool Creek to be an oasis with pristine waters which allowed him, his children, friends and family to camp, fish, hunt, swim and enjoy all these outdoor activities at the quarry and in Fishpool Creek without worry.

56.     Beginning in 2014, Stanford began noticing that the water coming into the quarry was a "[feces]-smelling murky brown" and sometime thereafter the fish had become deformed and discolored.  In addition, visibility of the water in the quarry had decreased immensely.  Eventually, after having the water tested and learning that the E. coli, coliform and fecal matter levels were "off the charts high," he was told by several environmental professionals it was no longer safe for anyone to be exposed to it.  This has taken away his ability to enjoy the quarry and turned his family oasis into a cesspit.

## VI.    CLAIMS

### A.    CLEAN WATER ACT CLAIMS

#### Count One:  MSD's violation of the Clean Water Act by diverting Fishpool Creek into Vulcan Quarry in excess of effluent standards and/or limitations

57.     Plaintiffs incorporate and restate the preceding allegations contained in paragraphs 1 through 56 of the Complaint.

58.     MSD is misappropriating a portion of Vulcan Quarry in violation of effluent or pollution standards or limitations under the Clean Water Act.

16

59.     MSD operates a Municipal Separate Storm Sewer System, its MS4, that collects, transports, and discharges stormwater in the Pond Creek Watershed. Because the stormwater and floodwater in the Pond Creek Watershed is heavily polluted, the Clean Water Act and its implementing regulations require MSD, as the operator of the MS4 controlling the Pond Creek Watershed and as the entity exercising control over that watershed generally, to obtain a KYPDES Permit issued by the Cabinet.

60.     MSD's operation of its MS4 and its flood and pollution control efforts related to the Vulcan Creek Detention Basin are subject to the effluent standards and limitations of the Clean Water Act. In addition, MSD's operation and exercise of control over the Pond Creek Watershed generally and over Fishpool Creek specifically, subject MSD and its flood and pollution control efforts related to the Vulcan Creek Detention Basin to the effluent standards and limitations of the Clean Water Act.

61.     Fishpool Creek carries with it pollution as a function of MSD's overflowing sewer system upstream from Vulcan Quarry in the Pond Creek Watershed and as part of MSD's MS4. The floodwater and stormwater runoff that is managed by MSD in connection with its continued operation of the Vulcan Quarry Detention Basin is a pollutant as defined by the U.S. Supreme Court.

> Petitioner Los Angeles County Flood Control District (District) operates a "municipal separate storm sewer system" (MS4)—a drainage system that collects, transports, and discharges storm water. See 40 CFR § 122.26(b)(8) (2012). See also § 122.26(b)(13) ("*Storm water* means storm water runoff, snow melt runoff, and surface runoff and drainage."). Because storm water is often heavily polluted, see 64 Fed.Reg. 68724–68727 (1999), the CWA and its implementing regulations require the operator of an MS4 serving a population of at least 100,000 to obtain a National Pollutant Discharge Elimination System (NPDES) permit before discharging storm water into navigable waters. See 33 U.S.C. §§ 1311(a), 1342(p)(2)(C), and (D); 40 CFR §§ 122.26(a)(3), (b)(4), (b)(7).

Los Angeles County Flood Control Dist. v. Nat. Resources Defense Council, Inc., 568 U.S.

78, 80–81, 133 S. Ct. 710, 712, 184 L. Ed. 2d 547 (2013).

62.    The Vulcan Quarry Detention Basin was created by MSD and is operated by MSD to address both flooding and effluent or pollution in excess of standards set forth in the Clean Water Act caused by stormwater and floodwater in the Pond Creek Watershed and Fishpool Creek. The creation, operation, and maintenance of the Vulcan Quarry Detention Basin is subject to the Clean Water Act.

63.    The permits issued by the Commonwealth applicable to the Vulcan Quarry Detention Basin pursuant to the CWA are subject to the Easement, which sets limitations on: (a) the volume of storm water that MSD can divert or discharge into Vulcan Quarry from Fishpool Creek; (b) the conditions that must be present for diversion or discharge of water from Fishpool Creek into Vulcan Quarry; and (c) the length of time that MSD can retain water from Fishpool Creek in Vulcan Quarry.

64.    The scope of the Easement is a limitation of effluent or pollution on any Permit issued by the Commonwealth allowing MSD to divert water from Fishpool Creek into Vulcan Quarry for any purpose, whether to address flooding, pollution or effluent in the Pond creek Watershed.

65.    MSD is in violation of the Clean Water Act because its diversion of Fishpool Creek, in excess of the Easement is in excess of any permit, which must be limited by the Easement, and is therefore in excess of limitations of the CWA.

66.    MSD is in violation of the Clean Water Act because it has failed to acquire proper KYPDES permits to discharge effluent laden floodwater into Vulcan Quarry, and to allow that effluent to settle in the bottom of the quarry.

67.    The above described violations are not covered by the Consent Decree.

68.     The Clean Water Act authorizes citizen suits against MSD for violating "an effluent standard or a limitation" under the Clean Water Act. Stanford and SSQ have standing as citizens to force MSD, the EPA, and the Cabinet not to exceed the limitations set forth any permits applicable to the Vulcan Quarry Detention Basin, which are the limitations set forth in the Easement.

69.     Because MSD's continuing operation of the Vulcan Quarry Detention Basin exceeds the Easement, it is a violation of the CWA.

70.     As a result, Plaintiffs are entitled to statutory and actual damages as well as injunctive relief as set forth herein.

**Count Two:  MSD's violation of the Clean Water Act
by not limiting its use of Vulcan Quarry
to a temporary detention basin**

71.     Plaintiffs incorporate and restate the preceding allegations contained in paragraphs 1 through 70 of the Complaint.

72.     By the permits issued by the Commonwealth and the Cabinet, and as limited by the Easement, MSD was only authorized to divert and store excess floodwater in Vulcan Quarry.  Under the Permit, this temporarily detained water is to be released back into Fishpool Creek after the flooding has subsided.  That is, MSD was and is only allowed to use Vulcan Quarry as a temporary detention basin for floodwaters.

73.      In practice, MSD is not using Vulcan Quarry as a detention basin. MSD is instead diverting a significant portion of Fishpool Creek into Vulcan Quarry on a regular and continuing basis.  When the creek flows, water enters the quarry.  This use by MSD effectively transforms Vulcan Quarry into a gigantic septic tank, dewatering pond, filtration system and/or settling pond. MSD is using Vulcan Quarry: to allow solids and heavier material and other pollutants from Fishpool Creek to settle in Vulcan Quarry; to

filter out large debris (such as tires and tree limbs); to allow significant amounts of water to evaporate; to allow water in the Pond Creek Watershed to be cleaned and purified as a function of exposure to sunlight.   In addition, MSD is allowing customers upstream to avoid their obligations to detain and/or treat runoff in exchange for a fee paid to MSD because MSD is using Vulcan Quarry in this manner.

74.    MSD's use of Vulcan Quarry for this purpose is a violation of the Easement, the permits issued by the Commonwealth, a violation of effluent standards or limitations set forth in the Clean Water Act, outside the scope of the Consent Decree and/or undertaken without proper permit.

75.    As a result of its use of Vulcan Quarry as a filtration/settling pond, MSD has caused pollutant laden sediment and debris to settle in the floor of Vulcan Quarry.  This sediment constitutes a discharge of pollutant into the waters of the U.S. separate and apart from MSD's use of the Vulcan Quarry Detention Basin to temporarily divert floodwater in Vulcan Quarry.  MSD is in practice permanently storing pollutant and debris on the bottom of Vulcan Quarry without permit, in violation of the Easement, outside the scope of the Consent Decree, and in violation of the Clean Water Act's prohibition on the discharge of pollutants into U.S. waters.

76.    As a result, Plaintiffs are entitled to statutory and actual damages as well as injunctive relief as set forth herein.

### Count Three:  MSD's use of Vulcan Quarry to control or address pollution/effluent problems in the Pond Creek Watershed is in violation of water volume limitations applicable to Vulcan Quarry

77.    Plaintiffs incorporate and restate the preceding allegations contained in paragraphs 1 through 76 of the Complaint.

78. MSD is misappropriating a portion of Vulcan Quarry in violation of an "effluent standard or limitation" under the Clean Water Act.

79. The Vulcan Quarry Detention Basin was created by MSD and is operated by MSD to address effluent in excess of standards set forth in the Clean Water Act and the necessary permits issued by the Commonwealth caused by stormwater and floodwater in the Pond Creek Watershed and Fishpool Creek. The creation, operation, and maintenance of the Vulcan Quarry Detention Basin is subject to the Clean Water Act.

80. The permits issued by the Commonwealth applicable to the Vulcan Quarry Detention Basin are subject to the Easement, which, among other limitations, sets a limitation on the volume of stormwater that MSD can divert or discharge into Vulcan Quarry from Fishpool Creek.

81. The Easement allows MSD to divert floodwater into Vulcan Quarry.

82. As constructed and operated by MSD, the Vulcan Quarry Detention Basin is diverting or discharging normal storm water after virtually any amount of rain from Fishpool Creek into Vulcan Quarry. This diversion results in a violation of an effluent standard or limitation because it is in excess of the volume permitted by the Easement and is either in excess of any volume allowed by any permit issued by the Commonwealth, or is without any permit whatsoever.

83. The Clean Water Act authorizes citizen suits against MSD for violating "an effluent standard or a limitation" under the Clean Water Act. Stanford and SSQ have standing as citizens to force MSD, the EPA, and the Cabinet not to exceed the volume limitation set forth in the Easement.

84. As a result, Plaintiffs are entitled to statutory and actual damages as well as injunctive relief as set forth herein.

### **Count Four:  MSD's use of Vulcan Quarry**
### **to control or address pollution/effluent problems**
### **in the Pond Creek Watershed is in violation of**
### **water storage limitations applicable to Vulcan Quarry**

85.    Plaintiffs incorporate and restate the preceding allegations contained in paragraphs 1 through 84 of the Complaint.

86.    MSD is misappropriating a portion of Vulcan Quarry in violation of an "effluent standard or limitation" under the Act.

87.    The Vulcan Quarry Detention Basin was created by MSD and is operated by MSD to address effluent in excess of standards set forth in the Clean Water Act and the necessary permits issued by the Commonwealth caused by stormwater and floodwater in the Pond Creek Watershed and Fishpool Creek. The creation, operation, and maintenance of the Vulcan Quarry Detention Basin is therefore subject to the Clean Water Act.

88.    The permits issued by the Commonwealth applicable to the Vulcan Quarry Detention Basin pursuant to the CWA are subject to the Easement, which, among other limitations, sets a limitation on the length of time that MSD can store stormwater or floodwater from Fishpool Creek in Vulcan Quarry.

89.    The Stream Construction Permit application allows MSD to store stormwater and floodwater in Vulcan Quarry only so long as flood conditions are ongoing in the area, and for a maximum of eight days under 200-year flood conditions.

90.    As constructed and operated by MSD, MSD is storing floodwater and stormwater from Fishpool Creek in Vulcan Quarry indefinitely and, for all practical purposes, permanently.

91.    The Clean Water Act authorizes citizen suits against MSD for violating "an effluent standard or a limitation" under the Clean Water Act. Stanford and SSQ have

standing as citizens to force MSD, the EPA, and the Cabinet not to exceed the volume limitation set forth in the Easement.

92.    As a result, Plaintiffs are entitled to statutory and actual damages as well as injunctive relief as set forth herein.

## Count Five:  MSD's use of Vulcan Quarry to control or address pollution/effluent problems in the Pond Creek Watershed is in violation of limitations applicable to Vulcan Quarry with respect to when water can be diverted from Fishpool Creek.

93.    Plaintiffs incorporate and restate the preceding allegations contained in paragraphs 1 through 92 of the Complaint.

94.    MSD is misappropriating a portion of Vulcan Quarry in violation of an "effluent standard or limitation" under the Act.

95.    The Vulcan Quarry Detention Basin was created by MSD and is operated by MSD to address effluent in excess of standards set forth in the Clean Water Act and the necessary permits issued by the Commonwealth caused by stormwater and floodwater in the Pond Creek Watershed and Fishpool Creek. The creation, operation, and maintenance of the Vulcan Quarry Detention Basin is therefore subject to the Clean Water Act.

96.    The permits issued by the Commonwealth applicable to the Vulcan Quarry Detention Basin pursuant to the CWA are subject to the Easement, which, among other limitations, sets a limitation on the conditions that must be present for MSD to divert or discharge water from Fishpool Creek into Vulcan Quarry.

97.    The Easement allows MSD to store water in Vulcan Quarry only during times of and a result of flooding or excess rainfall.

98.    As constructed and operated by MSD, MSD is storing diverted and discharged water from Fishpool Creek into Vulcan Quarry at times and under conditions

unrelated to flooding or excess rainfall.

99.    The Clean Water Act authorizes citizen suits against MSD for violating "an effluent standard or a limitation" under the Clean Water Act.

100.    Stanford and SSQ have standing as citizens to force MSD, the EPA, and the Cabinet not to exceed the volume limitation set forth in the Easement.

101.    As a result, Plaintiffs are entitled to statutory and actual damages as well as injunctive relief as set forth herein.

### Count Six:  The Commonwealth's issuance of permits to MSD to create and operate a detention basin at Vulcan Quarry in violation of the Clean Water Act

102.    Plaintiffs incorporate and restate the preceding allegations contained in paragraphs 1 through 101 of the Complaint.

103.    The permits issued by the Commonwealth with respect to the creation and operation of a detention basin at Vulcan Quarry are in violation of "effluent standards or limitations" under the Clean Water Act as described above.

104.    Stanford and SSQ have standing as citizens to force MSD, the EPA, and the Cabinet not to exceed the volume limitation set forth in the Easement.

105.    As a result, Plaintiffs are entitled to statutory and actual damages as well as injunctive relief as set forth herein.

### B.    STATE LAW CLAIMS

### Count Seven:  MSD's use of Vulcan Quarry to control or address flooding problems in the Pond Creek Watershed in violation of the Easement's water volume limitations

106.    Plaintiffs incorporate and restate the preceding allegations contained in paragraphs 1 through 105 of the Complaint.

107.    MSD is misappropriating a portion of Vulcan Quarry in violation of the Easement.

108.    The Vulcan Quarry Detention Basin was created by MSD and is operated by MSD to address flooding in the Pond Creek Watershed and Fishpool Creek.

109.    The permits issued by the Commonwealth applicable to the Vulcan Quarry Detention Basin are necessarily subject to the property rights of SSQ and Stanford not conveyed to MSD by the Easement, which among other limitations, sets a limitation on the volume of water that MSD can divert or discharge into Vulcan Quarry from Fishpool Creek.

110.    As constructed and operated by MSD, the Vulcan Quarry Detention Basin is diverting or discharging water from Fishpool Creek into Vulcan Quarry in excess of the volume permitted by the Easement as described in Count Three, above.

111.    Plaintiffs have been damaged by MSD's operation of the Vulcan Creek Detention Basin in excess of the volume limitation set forth in the Easement by overburdening the easement which has resulted in pollution, effluent, debris, and collecting in the quarry and a corresponding decrease in the value of the Quarry property.

112.    As a result, Plaintiffs are entitled to statutory and actual damages as well as injunctive relief as set forth herein.

**Count Eight:  MSD's use of Vulcan Quarry
to control or address flooding problems in the Pond Creek Watershed
in violation of the Easement's water storage limitations**

113.    Plaintiffs incorporate and restate the preceding allegations contained in paragraphs 1 through 112 of the Complaint.

114.    MSD is misappropriating a portion of Vulcan Quarry in violation of the Easement.

115.    The Vulcan Quarry Detention Basin was created by MSD and is operated by MSD to address flooding in the Pond Creek Watershed and Fishpool Creek.

116.    The permits issued by the Commonwealth applicable to the Vulcan Quarry Detention Basin pursuant to the CWA are subject to the Easement, which, among other limitations, sets a limitation on the length of time that MSD can store water from Fishpool Creek in Vulcan Quarry.

117.    As constructed and operated by MSD, MSD is storing water from Fishpool Creek in Vulcan Quarry longer than it has any right to do so as set forth in Count Four, above.

118.    Plaintiffs have been damaged by MSD's operation of the Vulcan Creek Detention Basin because MSD is storing water in Vulcan Quarry for longer periods of time than is permitted by the Easement in that as significant portion of Fishpool Creek is being diverted into Vulcan Quarry, rain or shine and at times not related to flooding, resulting in significant reduction in water quality, which in turn has significant negative effects on the value of the Quarry Property as well as Plaintiff's enjoyment of the property.

119.    As a result, Plaintiffs are entitled to statutory and actual damages as well as injunctive relief as set forth herein.

**Count Nine:  MSD's use of Vulcan Quarry
to control or address flooding problems in the Pond Creek Watershed
in violation of the Easement's limitations with respect to
when water can be diverted from Fishpool Creek**

120.    Plaintiffs incorporate and restate the preceding allegations contained in paragraphs 1 through 119 of the Complaint.

121.    MSD is misappropriating a portion of Vulcan Quarry in violation of the Easement.

122.     The Vulcan Quarry Detention Basin was created by MSD and is operated by MSD to address flooding in the Pond Creek Watershed and Fishpool Creek.

123.     The permits issued by the Commonwealth applicable to the Vulcan Quarry Detention Basin pursuant to the CWA are subject to the Easement, which, among other limitations, sets a limitation on the conditions that must be present for MSD to divert or discharge water from Fishpool Creek into Vulcan Quarry.

124.     The Easement allows MSD to divert or discharge water into Vulcan Quarry from Fishpool Creek only during times of and a result of flooding.

125.     As constructed and operated by MSD, MSD is storing and/or diverting water from Fishpool Creek into Vulcan Quarry at times and under conditions unrelated to flooding or excess rainfall.

126.     Stanford and SSQ have been damaged by MSD's operation of the Vulcan Creek Detention Basin because MSD is diverting a significant portion of Fishpool Creek into Vulcan Quarry at times not authorized by the Easement or by permits issued by the Commonwealth.

127.     As a result, Plaintiffs are entitled to statutory and actual damages as well as injunctive relief as set forth herein.

## Count Ten:  Nuisance

128.     Plaintiffs incorporate and restate the preceding allegations contained in paragraphs 1 through 127 of the Complaint.

129.     KRS 411.500 to 411.570 provides that anything that obstructs the free use of property so as to interfere with the comfortable enjoyment of life or property, or unlawfully obstructs the free passage or use, in the customary manner of any stream or canal is a nuisance.

130.    MSD's operation of the Vulcan Quarry Detention Basin interferes with Plaintiff's free use of their property and the comfortable enjoyment of their property by discharging untreated effluent into the stream that passes near and into SSQ's property. MSD's discharge of effluent creates a dangerous condition by posing a threat to public health and welfare and personal property.

131.    As a result, Plaintiffs are entitled to actual damages as well as injunctive relief, in an amount according to proof, resulting from MSD's actions constituting a private nuisance.

### Count Eleven:  Trespass

132.    Plaintiffs incorporate and restate the preceding allegations contained in paragraphs 1 through 131 of the Complaint.

133.    MSD and the Commonwealth have breached their respective duties of care to Plaintiffs in that they have caused and allowed and continue to discharge and divert a substantial portion of Fishpool Creek, including its pollutants, effluent and debris onto Plaintiff's property in excess of standards and limitations set forth in the Clean Water Act and the laws of Kentucky.

134.    By causing sediment to collect on Plaintiffs' Property, in the bottom of Vulcan Quarry, MSD has allowed pollution, effluent and debris to enter upon the land of Plaintiff, which reduces the value of the Quarry Property, both with respect to its monetary value as well as with respect to Plaintiff's ability to safely and fully utilize the Quarry Property.

135.    In addition to a violation of Plaintiffs' property rights, these actions of Defendants MSD and the Commonwealth threaten the health, safety and welfare of Plaintiff and his family.

136.    As a result, Plaintiffs are entitled to actual damages as well as injunctive relief, in an amount according to proof, resulting from MSD's actions constituting a trespass.

## Count Twelve:  MSD's use of Vulcan Quarry as a permanent detention basin is a reverse condemnation of the Quarry Property

137.    Plaintiffs incorporate and restate the preceding allegations contained in paragraphs 1 through 136 of the Complaint.

138.    MSD is misappropriating a portion of Vulcan Quarry in violation of the Easement.

139.    The Vulcan Quarry Detention Basin was created by MSD and is operated by MSD to address flooding in the Pond Creek Watershed and Fishpool Creek.

140.    The permits issued by the Commonwealth applicable to the Vulcan Quarry Detention Basin pursuant to the CWA are subject to the Easement.

141.    Pursuant to KRS 65.115, MSD is obligated to compensate Plaintiffs for the full value of the Vulcan Quarry Detention Basin as built, including the value of the Vulcan Quarry detention Basin that is in excess of the Easements.

142.    MSD has failed to condemn or to compensate Plaintiff as required by KRS 65.115. Condemnation proceedings initiated by MSD with respect to Vulcan Quarry have concluded in Plaintiffs favor in that MSD was granted an Easement permitted a limited use of Vulcan Quarry. In violation of the Easement terms and the rulings arising out of the Condemnation Action, MSD has exercised control and dominion over the quarry in such a way as to constitute a complete taking of the Quarry Property.

143.    MSD's creation and continued operation of the Vulcan Quarry Detention Basin constitutes a "taking" of the Quarry Property, in that it causes water in excess of

that permitted by the Easement to enter upon the Quarry Property, and causes pollutant laden sediment and debris to collect on the floor of Vulcan Quarry, and deprives Plaintiffs of all beneficial use of their property.

144.    Pursuant to KRS 65.115, MSD is obligated to compensate Plaintiffs for the full value of the Vulcan Quarry Detention Basin as built, including the value of the Vulcan Quarry Detention Basin that is in excess of the Easements, and the ruling of the Kentucky Courts and the applicable permits.

145.    MSD has failed to compensate Plaintiffs for the full value of the taking of the Quarry Property.  As a result, Plaintiffs are entitled to their damages.

### Count Thirteen:  Damage to Quarry Property Roadway

146.    Plaintiffs incorporate and restate the preceding allegations contained in paragraphs 1 through 145 of the Complaint.

147.    Through the use of an easement permitting MSD to access the Quarry Property ("the **Roadway Easement**") that is identified in the Easement, MSD caused a large portion of the access road on the Quarry Property, Fish Pool Drive, to collapse, leaving a substantial cavity in the Quarry Property and damaging both the Property's surface and subsurface. (Photos of the Collapsed Portion of the Roadway Easement are attached as **Attachment 3**).  Under the terms of the Easement, MSD assumed full responsibility for any damage caused by MSD in its use of the Quarry. (Exhibit C to Notice Letter at ¶¶ 3, 7, **Attachment 1**).  Instead of fixing the Property, MSD began trespassing on a portion of the Quarry Property in the northeast corner between Fish Pool Drive and South Park Road that was not subject to any Easement at all.  This *de facto* addition to the Easement constitutes trespass and violates the overall Road Easement in terms of area.

148.    As a result, Plaintiffs are entitled to their damages, including the costs to repair the Roadway Easement area back to its original condition.

### Count Fourteen:  Injunctive Relief

149.    Plaintiffs incorporate and restate the preceding allegations contained in paragraphs 1 through 148 of the Complaint.

150.    The actions of MSD in constructing and operating the Vulcan Quarry Detention Basin as built, which allows water and debris to be diverted from Fishpool Creek at times not related to flooding conditions or excess rainfall is in clear violation of the terms set forth in the Easement and in direct contravention to the position it has consistently taken in court documents and with respect to its attempts to obtain permits for the project.

151.    These acts, as fully set forth above in the preceding paragraphs of this Complaint, are abusive, without justification and are causing and will continue to cause irreparable harm to Plaintiffs if not remedied and prevented.

152.    These acts are in clear violation of the Clean Water Act and applicable law and entitle Plaintiffs to immediate and permanent injunctive relief pursuant to FRCP 65.

153.    If an injunction requiring MSD to limit its diversion of Fishpool Creek into Vulcan Quarry to the extent imposed by the Easement is not granted, Plaintiffs will suffer continued, recurring and irreparable harm due to their inability to enjoy their full property rights and will leave Plaintiffs with no adequate remedy at law.

154.    The acts of MSD have already caused substantial harm to Plaintiffs enjoyment and use of their property in that Plaintiffs are deprived of the full enjoyment and use of their property.

## VII.   RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully requests that this Court grant the following relief:

(1)     A Court order declaring MSD to have violated and to be in violation of Section 301(a) of the CWA, (33 U.S.C. § 1311(a)), for their unpermitted discharges of pollutants;

(2)     A Court order declaring MSD to have violated and to be in violation of Section 301(a) of the CWA, (33 U.S.C. § 1311(a)), for discharging pollutants in violation of an NPDES permit.

(3)     A Court order enjoining MSD from violating the substantive and procedural requirements of its NPDES permit;

(4)     Declare that MSD's diversion of Fishpool Creek into Vulcan Quarry is in excess of effluent standards and/or limitations in violation of the Clean Water Act;

(5)     Declare that MSD's use of Vulcan Quarry was and is limited to using the quarry as a temporary detention basin;

(6)     Declare that MSD's use of Vulcan Quarry to address, treat and/or control pollution and effluent in the Pond Creek Watershed is in violation of the Clean Water Act;

(7)     Declare that the Commonwealth's issuance of permits to MSD to create and operate a detention basin at Vulcan Quarry were in violation of the Clean Water Act;

(8)     Order that MSD clean up debris, pollution and effluent that has collected in Vulcan Quarry as a result of MSD's use of Vulcan Quarry as a detention

basin;

(9)    Order that MSD maintain its operations at Vulcan Quarry and compensate Plaintiffs in an amount to be determined at trial, representing maintenance performed to date by Plaintiffs;

(10)    Declare that MSD's use of Vulcan Quarry has overburdened and continues to overburden the Easement;

(11)    Order that MSD immediately cease and desist and enjoin its use of Vulcan Quarry as a detention basin pursuant to FRCP 65;

(12)    Award damages to Plaintiffs in an amount to be determined on Plaintiffs' Damage to Roadway/Nuisance, and Trespass claims;

(13)    Order that a hearing be conducted forthwith to determine the value of Vulcan Quarry and award to Plaintiffs that amount as compensation for MSD's reverse condemnation of the quarry;

(14)    Order that MSD repair and maintain the roadway identified in the Easement;

(15)    Access all applicable civil penalties as warranted pursuant to 33 U.S.C. § 1319, KRS 151.280 and KRS 151.990(1), and other applicable law for MSD's deviations from the Stream Construction Permit;

(16)    Award Plaintiffs their reasonable fees, costs, expenses and disbursements, including attorneys' fees associated with this litigation as provided for by Sections 309(d) and 505(a) of the Clean Water Act;

(17)    Compensatory and consequential damages;

(18)    Trial by Jury;

(19)    Pre and Post Judgment Interest;  and

(20)   Grant Plaintiffs such additional and further relief as the Court may deem just, proper and necessary.

Respectfully submitted,

 /s/  John D. Cox
John D. Cox
Petersen S. Thomas
LYNCH, COX, GILMAN & GOODMAN, P.S.C.
500 West Jefferson Street
Suite 2100
Louisville, Kentucky  40202
(502) 589-4215
jcox@lynchcox.com
pthomas@lynchcox.com
***Counsel for Plaintiffs South Side Quarry
and Jason Lee Stanford***

## VERIFICATION

I have read the foregoing Complaint for Declaratory and Injunctive Relief, Civil Penalties and Damages, and the statements contained herein are true and correct to the best of my knowledge and belief.

_____
JASON L. STANFORD

Date: _Oct. 26, 2018_

COMMONWEALTH OF KENTUCKY    )
                                                          )
COUNTY OF JEFFERSON             )

Subscribed and sworn to before me this _26th_ day of October, 2018 by Jason L. Stanford.

My commission expires: _July 5, 2022_.

_____
NOTARY PUBLIC, STATE AT LARGE
KENTUCKY