UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

SOUTH SIDE QUARRY, LLC and
JASON LEE STANFORD,                                                          Plaintiffs,

v.                                                                  Civil Action No. 3:18-cv-706-DJH-RSE

METROPOLITAN SEWER DISTRICT and
ANDY BESHEAR,                                                                Defendants.

* * * * *

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jason Lee Stanford purchased Vulcan Quarry, a large inactive quarry now filled with water, in 2012.  Since 1998, the quarry has been part of a drainage system built by the United States Army Corps of Engineers to prevent flooding in the area.  Defendant Metropolitan Sewer District is the local sponsor of that drainage system and is required to maintain it.  One day in 2014, Stanford noticed that the quality of water in the quarry had deteriorated.  He tested the water and found that it contained high levels of contaminants.  Stanford and his business, South Side Quarry, LLC, allege that MSD is responsible for overburdening the quarry with stormwater and dumping sewage into the quarry, all in violation of the Clean Water Act and state law.  (Docket No. 1)  MSD moves the Court to dismiss the claims.  (D.N. 11)  For the reasons explained below, the Court will grant MSD's motion in part.

**I.**

The following facts are either undisputed or set out in the complaint and accepted as true for purposes of the pending Rule 12(b)(6) motion.  *See Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)).  This action concerns the area known as Vulcan Quarry, a fifty-acre piece of

1

land in Jefferson County, Kentucky.  The quarry is part of the Pond Creek Watershed.  (D.N. 1, PageID # 8)  The quarry is now inactive and filled with water.  (D.N. 11-3, PageID # 175)  Jason Lee Stanford purchased the quarry at a foreclosure sale in 2012.  (D.N. 1, PageID # 15)

**A.**

Pond Creek Watershed is prone to flooding, and Congress therefore approved a plan to engineer an overflow drainage system of the nearby Fishpool Creek.  (D.N. 11-3 (Cooperation Agreement between USACE and MSD); D.N. 11-2 (Photo of Vulcan Quarry))  MSD is the local sponsor of the project and has managed it with the United States Army Corps of Engineers since the project began in 1998.  (D.N. 11-1, PageID # 124; D.N. 11-4, PageID # 177)  The drainage system implicated the quarry, and MSD attempted to take ownership of the quarry through eminent domain, claiming that it would use the quarry to reduce excessive flooding in the Pond Creek Watershed.  (D.N. 1, PageID # 10)  Instead of allowing MSD to take the property in fee, Jefferson Circuit Court granted MSD multiple easements because the "proposed taking [condemnation] would far exceed MSD's contemplated use." (*Id.*)  ORK, Plaintiffs' predecessor in interest in the quarry, granted MSD an easement in response to the court order.  (D.N. 1-1, PageID # 61)  The "flowage" easement provides that MSD has

> [t]he perpetual right, power, privilege and easement to permanently overflow, flood and submerge the land . . . in connection with the operation and maintenance of the Pond Creek Local Flood Protection Project as authorized by Act of Congress . . . provided further that any use of the land shall be subject to Federal and State laws with respect to pollution.

(*Id.*)  The Kentucky Court of Appeals later affirmed the lower court's decision.  The appellate court held that MSD only needed an easement because the underlying purpose of MSD's use was to "divert additional water into the [Quarry] and then release the water after the rain has subsided,"

2

which could be accomplished through easements instead of a transfer of ownership. (D.N. 1, PageID # 10)

When Plaintiffs bought the quarry and became successors in interest to ORK, they filed a motion to show cause against MSD in Jefferson Circuit Court. (D.N. 11-13, PageID # 480) The motion asserted that MSD should be held in civil and criminal contempt for violating the terms of the easement and diverting too much water into the quarry. (*Id.*) The court denied that motion, but the litigation and activity around the quarry continued. (*Id.*)

After obtaining the easement, MSD acquired a permit from Kentucky's Department of Environmental Protection, which operates as the local arm of the National Pollution Discharge Elimination System and issues permits to entities who would otherwise violate the CWA by discharging any pollutant. (D.N. 1, Page ID # 13)   KDEP issued the permit for the overflow project, and MSD and the USACE began the civil engineering project and created a retention basin in the quarry. (*Id.*) The basin is filled via an artificially constructed spillway and a gravity-driven drain and is contiguous with the rest of the quarry. (*Id.*, PageID # 14)

Plaintiffs allege that the project amounts to a taking of their property because it allows "millions of gallons of effluent and pollutant and debris laden water" to enter the quarry, regardless of flood conditions. (*Id.*, PageID # 15) According to Plaintiffs, this causes the surface elevation of the water in the quarry to rise and dispossesses them of millions of cubic feet of property. (*Id.*) They claim that the project, as executed, allowed MSD to use the quarry as if MSD owned it in fee, instead of merely owning easements. (*Id.*) Plaintiffs contend that the project operated outside the parameters of the civil engineering plan, the easements, and the KDEP permit. (*Id.*)

**B.**

MSD has an ongoing problem with sanitary sewer overflows and entered a consent decree with the Commonwealth of Kentucky, through a KDEP permit, and the EPA, in compliance with the Clean Water Act, to maintain a plan to minimize unauthorized discharge from certain combined sewage overflow locations.  (*Id.*, PageID # 11)  According to Plaintiffs, pollutants are settling in the quarry and infringing upon Plaintiffs' property rights.  Specifically, Plaintiffs assert that "MSD is utilizing Vulcan Quarry as a permanent settling pond/septic system/filtration system," and that this process has turned the property into a "cesspool."  (*Id.*)

As is required under the Clean Water Act, Plaintiffs sent a notice of intent to MSD, KDEP, and the Environmental Protection Agency conveying their intent to pursue a CWA "citizen suit." (D.N. 1-1)  The CWA provides for civil actions against any defendant allegedly in violation of an effluent standard or limitation.  33 U.S.C. § 1365(a)(1).  Any pollutant discharge not authorized by an NPDES-approved permit violates the CWA.  *Id.* §§ 1311(a), 1342, 1365(f)(6).  In their notice, Plaintiffs asserted that MSD is violating its KDEP and NPDES permits by exceeding the volume of water that the permits allow MSD to route over and through the quarry.  (D.N. 1-1, PageID # 38)

Plaintiffs filed this suit on October 26, 2018, alleging that MSD violated the CWA by polluting the quarry.  (D.N. 1)  Plaintiffs also brought numerous state-law claims relating to MSD's use of the quarry.  (*Id.*)  MSD moves to dismiss the complaint for failure to state a claim.  (D.N. 11)  Plaintiffs responded (D.N. 17), and MSD replied.  (D.N. 18)  The Court held oral argument

on the motion to dismiss on October 25, 2019.  (D.N. 31)  Plaintiffs move to file an amended complaint (D.N. 26), while MSD moves for leave to file a sur-reply.[1]  (D.N. 30)

## II.

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Factual allegations are essential; "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and the Court need not accept such statements as true.  *Id.*  A complaint whose "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct" does not satisfy the pleading requirements of Rule 8 and will not withstand a motion to dismiss.  *Id.* at 679.

## III.

### A.    Pleadings

At the outset, the Court recognizes that when ruling on a motion to dismiss, it may consider "only matters properly a part of the complaint or pleadings."  *Armengau v. Cline*, 7 F. App'x 336, 343 (6th Cir. 2001).  Once "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided under Rule 56."  Fed. R. Civ. P. 12(b).  The Sixth Circuit, however, has taken a "liberal view of what

---

[1] Because the motion to file an amended complaint adds only a state-law claim and the Court will decline to exercise supplemental jurisdiction over the state-law claims, the motion to file an amended complaint will be denied as moot.  MSD's motion to file a sur-reply is unopposed and will therefore be granted.

matters fall within the pleadings"; if a document is "referred to in a complaint and central to the claim, documents attached to a motion to dismiss" may be considered.  *Armengau*, 7 F. App'x at 344 (citing *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999)).  Courts may also consider "public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies" at this stage.  *Id*; *see Williams v. Porter Bancorp, Inc.*, 41 F. Supp. 3d 676, 680 (W.D. Ky. 2014) (taking judicial notice of public record without converting motion to dismiss to motion for summary judgment).

The Court finds that the exhibits attached to MSD's motion to dismiss (D.N. 11-2 – D.N. 11-13), while not particularly helpful, fall into several of these categories.  The Court may therefore consider them without converting the motion to dismiss into a motion for summary judgment.

**B.     Clean Water Act Claims**

The purpose of the CWA is "to achieve 'water quality which provides for the protection and propagation of fish, shellfish, and wildlife and provides for recreation in and on the water.'" *Nat'l Cotton Council of Am. v. EPA*, 553 F.3d 927, 930 (6th Cir. 2009) (quoting 33 U.S.C. § 1251(a)(2)).  Private citizens may sue to enforce the CWA subject to notice requirements.  *See* 33 U.S.C. § 1365.  "A CWA claim comes to life when five elements are present: '(1) a pollutant must be (2) added (3) to navigable waters (4) from (5) a point source.'" *Ky. Waterways All. v. Ky. Util. Co.*, 905 F.3d 925, 932 (6th Cir. 2018) (quoting *Nat'l Wildlife Fed'n v. Consumers Power Co.*, 862 F.2d 580, 583 (6th Cir. 1988)).

The first element is dispositive in this case.  "Pollutant" is a "statutorily defined term that includes, at least, 'dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt and industrial, municipal, and agricultural waste discharged into

6

water.'"  *Nat'l Cotton Council of Am.*, 553 F.3d at 930 (quoting 33 U.S.C. § 1362(6)).  Here, Plaintiffs allege that MSD has added two distinct pollutants to the quarry: (1) wastewater in an amount that exceeds the relevant permits and (2) "literal sewage."  (D.N. 1, PageID # 6; D.N. 32, PageID # 850)  The Court will consider each in turn.

### 1.    Excess Water

Plaintiffs allege that MSD has discharged "floodwater and/or stormwater from Fishpool Creek into Vulcan Quarry" and that MSD has rerouted "Fishpool Creek into Vulcan Quarry in excess of the volume authorized by permit, at times not authorized by permit, and for periods longer than authorized by permit."  (D.N. 1, PageID # 6)  Simply put, Plaintiffs take issue with how water flows into the quarry via the drainage system that the USACE built and MSD now operates.  (*See* D.N. 1)

Irrespective of whether MSD has violated the relevant permits, MSD asserts that Plaintiffs' claims must be dismissed as time-barred because the applicable limitations period has run.  The applicable statute of limitations for actions brought under the citizen-suit provision of the CWA is five years.  *See Brewer v. Ravan*, 680 F. Supp. 1176, 1183 (M.D. Tenn. 1988).  MSD argues that the show-cause motion Plaintiffs filed in Jefferson Circuit Court on June 12, 2013, shows that Plaintiffs were aware of MSD's alleged pollution of the quarry before 2014—and thus outside the relevant limitations period.  (D.N. 11-1, PageID # 142)

The Court agrees in part.  The motion to show cause establishes that Plaintiffs were aware of pollution of the quarry via excessive "storm water flowage"—that is, more water than allowed by the permits and easements—at the time of its filing.  (D.N. 11-13, PageID # 490)  Regardless of whether the excess stormwater exceeds the limits of the easements or violates the CWA, Plaintiffs have been litigating the issue of excessive stormwater in the quarry with MSD since June

7

12, 2013, at the latest.  Plaintiffs filed their complaint in this case on October 26, 2018, more than five years later.  (D.N. 1)  Thus, Plaintiffs' claims as to any "pollution" of the quarry caused by excess stormwater are time-barred.  *See Ravan*, 680 F. Supp. at 1183.

The motion to show cause does not, however, mention sewage or "[feces]-smelling" water, and therefore Plaintiffs' assertions as to raw sewage polluting the quarry must be considered separately.  (D.N. 1, PageID # 16)

### 2.    Sewage

Plaintiffs allege in the complaint that "MSD is utilizing Vulcan Quarry as a permanent settling pond/septic system/filtration system.  Millions of gallons of effluent and pollutant and debris laden water enters the [Q]uarry on a regular basis."  (D.N. 1, PageID # 15)  But, at oral argument, Plaintiffs stated that they "filed this case because [MSD is] dumping [sewage] into the [Q]uarry."  (D.N. 32, PageID # 840)  Plaintiffs assert that Stanford's "oasis" has been turned into a "cesspit."  (D.N. 1, PageID # 16)  MSD asserted at oral argument that it did not discharge anything, including "untreated sewage," into the quarry.  (D.N. 32, PageID # 832–33)  Although the complaint mentions sanitary sewage overflows, it fails to identify any specific point of origin for the sewage that has allegedly made its way into the quarry.  (D.N. 1, PageID # 11)  MSD also pointed out that "there's no specific allegation" in the complaint "of anything upstream where MSD has a facility, for example, [from which] it discharges" anything into the quarry.  (D.N. 32, PageID # 832–33)  Plaintiffs conceded that they "don't know" what the source of the sewage is, but that they "hope to find out through discovery exactly what the cause of it is."  (*Id.*, PageID # 842–43)

CWA claims carry a strict notice requirement.  The Sixth Circuit "has always required plaintiffs to adhere to § 1365's notice provision because compliance with the notice requirement

is a jurisdictional prerequisite to recovery under the statute." *Bd. of Trs. of Painesville Twp. v. City of Painesville*, 200 F.3d 396, 400 (6th Cir. 1999) (citing *Hallstrom v. Tillamook Cty.*, 493 U.S. 20, 26 (1989)); *see also Walls v. Waste Res. Corp.*, 761 F.2d 311, 316 (6th Cir. 1985) (holding that "compliance with the sixty day notice requirement is a jurisdictional prerequisite to bringing suit against private defendants under the . . . [CWA]"). Under the relevant EPA regulations, the notice must "include sufficient information to permit the recipient to identify the specific standard, limitation, or order alleged to have been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the location of the alleged violation, the date or dates of such violation, and the full name, address, and telephone number of the person giving notice." *Cooper v. Toledo Area Sanitary Dist.*, 797 F. App'x 920, 923 (6th Cir. 2019) (quoting 40 C.F.R. § 135.3(a)); *see Sierra Club v. Hamilton Cty. Bd. of Cty. Comm'rs*, 504 F.3d 634, 637 (6th Cir. 2007).

In short, for a CWA claim to be viable, "the notice must 'contain sufficient information to allow Defendants to identify all pertinent aspects of its [alleged] violations without extensive investigation.'" *Cooper*, 797 F. App'x at 924 (quoting *Sierra Club*, 504 F.3d at 644). "Accordingly, when a citizen plaintiff fails to provide the required notice, 'the district court must dismiss the action as barred by the terms of the statute.'" *Atl. States Legal Found., Inc. v. United Musical Instruments, U.S.A., Inc.*, 61 F.3d 473, 478 (6th Cir. 1995) (quoting *Hallstrom*, 493 U.S. at 33).

Although Plaintiffs' notice letter detailed how MSD allegedly violated the CWA when—according to Plaintiffs—MSD exceeded the "effluent standards or limitations" of the relevant KDEP permit, the letter is devoid of any allegation that MSD permitted sewage to enter the quarry. (D.N. 1-1, PageID # 38) The notice letter only refers to "floodwater" and "stormwater" as sources

of pollution.  (*See id*., PageID # 47)  Not only does Plaintiffs' notice letter fail to identify sewage as a pollutant, but it fails to identify the dates of any alleged violations.  *See United Musical Instruments*, 61 F.3d at 478 (affirming dismissal of CWA claim because plaintiffs failed to identify the dates of the alleged violations).

As pointed out by MSD in its rebuttal argument, Plaintiffs cannot assert that MSD is polluting the quarry by "simply saying somewhere upstream there may be a discharge . . . from the sanitary sewers" without filing an appropriate notice.  (D.N. 32, PageID # 853–54)  Plaintiffs' notice letter is deficient with respect to any claim that MSD is polluting the quarry with raw sewage because it does not effectively put MSD, the EPA, or KDEP on notice that Plaintiffs intended to sue MSD for polluting the quarry with sewage.  *Cooper*, 797 F. App'x at 924 (quoting *Sierra Club*, 504 F.3d at 644).  Therefore, the Court "must dismiss the action as barred by the terms of the statute.'"  *United Musical Instruments*, 61 F.3d at 478 (quoting *Hallstrom*, 493 U.S. at 33).

## C.    State-Law Claims

Plaintiffs' remaining claims follow from state law.  The Sixth Circuit "has held that 'a federal court that has dismissed a plaintiff's federal-law claims should not ordinarily reach the plaintiff's state-law claims.'"  *Winkler v. Madison Cty.*, 893 F.3d 877, 905 (6th Cir. 2018) (quoting *Rouster v. Cty. of Saginaw*, 749 F.3d 437, 454 (6th Cir. 2014)); *see Ailor v. Cty. of Maynardville*, 368 F.3d 587, 595 (6th Cir. 2004) (affirming district court's decision to decline supplemental jurisdiction over state-law claims after dismissing CWA claims).  Because Plaintiffs' CWA claims will be dismissed, the Court declines to exercise supplemental jurisdiction over the remaining state-law claims.

**IV.**

Based on the facts detailed above, the Court finds that Plaintiffs' federal claims are either time-barred or procedurally deficient.  Because the federal claims will be dismissed, the Court will not exercise its jurisdiction to consider Plaintiffs' numerous state-law claims.  Accordingly, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1)      Plaintiffs' Motion for Leave to File Amended Complaint (D.N. 26) is **DENIED** as moot.

(2)      Metropolitan Sewer District's Motion for Leave to File Sur-Reply (D.N. 30) is **GRANTED**.

(3)      Metropolitan Sewer District's Motion to Dismiss (D.N. 11) is **GRANTED** as to Counts One and Two, which are **DISMISSED** with prejudice.  Plaintiffs' state-law claims are **DISMISSED** without prejudice.  This action is **DISMISSED** and **STRICKEN** from the Court's docket.